UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN MARIE DARLING,                        Case No. 18-10479

               Plaintiff,                      Mark A. Goldsmith
v.                                          United States District Judge

COMMISSIONER OF SOCIAL                      Stephanie Dawkins Davis
SECURITY,                                   United States Magistrate Judge

               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 16, 18)**

## I.  PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On February 9, 2018, plaintiff Shawn Marie Darling filed the instant suit. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Mark A. Goldsmith referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits.  (Dkt. 3).  Currently before the Court are the parties' cross-motions for summary judgment.  (Dkt. 16, 18).

B.     Administrative Proceedings

Darling filed an application for a period of disability, disability insurance benefits, and supplemental security income on April 10, 2014, alleging disability beginning on June 10, 2010.  (Tr. 18).[1]  Her claims were initially disapproved by the Commissioner on September 30, 2014.  Darling requested a hearing and on June 2, 2016, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Sarah Zimmerman, who considered the case *de novo*.  (Tr. 18-32).  In a decision dated December 12, 2016, the ALJ found that plaintiff was not disabled. (Tr. 32).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on December 7, 2017, denied plaintiff's request for review. (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    ALJ FINDINGS

Darling, born December 5, 1975, was 34 years old on the alleged disability onset date (Tr. 31) and 36 years old as of June 7, 2012, the day before the period

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

covered by the instant application for benefits (Tr. 25).  While the alleged onset date is June 10, 2010, the ALJ found Darling's prior application binding and that the doctrine of *res judicata* applies to the period prior to June 8, 2012.  (Tr. 18).  Therefore, the ALJ decision covers the period beginning June 8, 2012 through the date of the decision.  She alleges that her panic attacks, asthma attacks, depression, and difficulty sitting or standing for five minutes in one spot render her disabled.  (Tr. 25; 67-68).  She attended high school up to the 11th grade and has not obtained a GED.  (Tr. 49, 52).  She has past relevant work as a cashier/checker, a team assembler, and a housekeeper.  (Tr. 103).[2]

The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 21).  At step two, the ALJ found that Darling's disorders of the spine, intermittent asthma, affective disorder, anxiety, autistic disorder, and learning disorder were "severe" within the meaning of the second sequential step.  (Tr. 21).  However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (*Id.*).

---

[2] This past relevant work determination comes from Darling's prior administrative decision, dated January 10, 2012.  Darling's past relevant work has not changed since that decision.  (Tr. 31).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: She can lift and/or carry up to 10 pounds occasionally and can carry less than 10 pounds frequently. She can stand and/or walk for up to 2 hours per 8-hour workday and sit for up to 6 hours per 8-hour workday. She must be able to change positions for at least 5 minutes from sitting to standing or walking (or from standing or walking to sitting) every 45 to 60 minutes while remaining on task 90% of each workday. She can occasionally push or pull, operate hand controls, or reach overhead with the upper extremities. She can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can never be exposed to extreme cold, extreme wetness or vibration. She can occasionally be exposed to atmospheric conditions, but never in excessive amounts. She can have no more than occasional interaction with supervisors, coworkers and the public. She is able to understand, remember, and carry out simple instructions. She can tolerate occasional work place changes and/or reading requirements. She needs reminders to perform tasks more complicated than 1- to 2-step tasks. She is not able to perform at a production rate pace, such as assembly line work.

(Tr. 24). At step four, the ALJ found that Darling's inability to perform any past

relevant work was unchanged since the prior decision. (Tr. 31). At step five, the

ALJ denied plaintiff benefits because she found that there were jobs that exist in

significant numbers in the national economy that plaintiff can perform.  (Tr. 31-32).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526

(6th Cir. 2006).

      B.    <u>Governing Law</u>

      The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty-stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether: (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Consideration of Mr. Longacre's and Ms. Ryckman's Records

Darling first argues that the ALJ should have accounted for the opinions of psychologist, Mr. Longacre and vocational counselor, Martha Ryckman.  (Dkt. 16, at p. 14).  Darling's representative submitted additional evidence to the ALJ after the administrative hearing that the ALJ indicated she "fully considered."  However, according to Darling, the ALJ failed to even mention the evidence in her analysis. Though Darling acknowledges that an ALJ is not required to discuss every piece of evidence in the record, she contends that the ALJ was still required to explain the weight accorded to Mr. Longacre's and Ms. Ryckman's opinions.  (*Id.* at p. 15).

The Commissioner argues that neither Mr. Longacre nor Ms. Ryckman are acceptable medical sources, and neither provided medical opinions that the ALJ was required to weigh.  (Dkt. 18, at p. 7).  Mr. Longacre is a limited license

psychologist/school psychologist, and therefore does not qualify as an acceptable medical source, and Ms. Ryckman, as a rehabilitation counselor is not a medical source qualified to opine on Darling's functional abilities. As non-acceptable medical sources, the ALJ was required to do nothing more than consider their evidence, which the ALJ did in this case. (*Id.* a pp. 7-8). Further, the Commissioner contends that Longacre's and Ryckman's records do not support Darling's argument. Mr. Longacre's findings include the conclusion that Darling's strength in perception of visual stimuli would work well with her goal of training to become a cosmetologist or veterinary assistant, and he stated that Darling should be afforded several educational accommodations, including disregarding her spelling errors and reducing task complexity. (*Id.* at p. 9; Tr. 942-43). In evaluating Darling for job coaching and placement, Ms. Ryckman indicated that Darling had impaired ability to use written materials, difficulty with interpersonal relationships, could only learn routine and repetitive tasks, and would work poorly under stressful conditions or deadlines. (*Id.* at p. 9-10; Tr. 1001-03). The ALJ accounted for these findings in the RFC in limiting Darling to only occasional interaction with others, simple instructions, occasional workplace changes and reading requirements, reminders for performing more complicated tasks, and no production-rate tasks. As such, Darling has not shown how the ALJ's treatment of Longacre's and Ryckman's evidence would result in a more restrictive RFC.

In the view of the undersigned, there is no reversible error in the ALJ's treatment of Mr. Longacre's and Ms. Ryckman's record evidence.  As discussed in greater detail below, neither are acceptable medical sources; thus, their statements or opinions are not entitled to any deference.  Further, the ALJ is not required to discuss every piece of evidence in the record and even if there were any error in the ALJ's failure to discuss the opinions, it would be harmless because the opinions are consistent with the RFC, and the RFC is otherwise supported by substantial evidence.

The regulations describe "acceptable" medical sources as those who may establish whether an individual has a medically determinable impairment.  *See* 20 C.F.R. § 404.1513 ("Medical and other evidence of your impairment(s).").  The agency requests and evaluates opinions from acceptable medical sources, but "other" medical sources (including nurse practitioners, physician's assistants, chiropractors, and therapists) may also provide opinions and evidence.  *See id*.  "Other sources" include medical sources, such as therapists and non-medical sources such as the claimant or the claimant's family member who are not "acceptable medical sources" under the regulations. 20 C.F.R. § 416.913(d)(1). "Other sources" may provide evidence as to the severity of a claimant's impairment as well as the effects the impairment has on the claimant's ability to work, but they "cannot establish the existence of a disability." *Baker v. Colvin*,

2016 WL 6501361, at *9 (E.D. Tenn. Aug. 22, 2016), *report and recommendation adopted*, 2016 WL 6496239 (E.D. Tenn. Nov. 2, 2016) (citing *Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 392, 398 (6th Cir. 2014).  Accordingly, opinions or other evidence rendered by "other sources" are not subject to any special degree of deference.  *Noto v. Comm'r of Soc. Sec.*, 632 Fed. Appx. 243, 248-49 (6th Cir. 2015) ("The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record.").  Nevertheless, under the regulations and Social Security Rule (SSR) 06-03p, the ALJ should discuss evidence from other sources "or at least provide reasoning that shows the ALJ considered the substantive elements of the opinions."  *Prince v. Comm'r of Soc. Sec.*, 2014 WL 4639506, at *19 (E.D. Mich. Sept. 16, 2014).

This district has held that a limited license psychologist, such as Mr. Longacre, is not an acceptable medical source.  *See Bethke v. Comm'r of Soc. Sec.*, 2016 WL 6211729, at *7 (E.D. Mich. Jan. 22, 2016); *Madajski v. Comm'r of Soc. Sec.*, 2013 WL 1211904, at *1, n.1 (E.D. Mich. Mar. 25, 2013).  Ms. Ryckman, as a rehabilitation counselor, is also not an acceptable medical source.  *See York v. Comm'r of Soc. Sec.*, 2014 WL 1213240, at *5 (S.D. Ohio Mar. 24, 2014) (noting that rehabilitation counselors are not acceptable medical sources); *Stamps v. Comm'r of Soc. Sec.*, 2016 WL 4500793, at *5 (W.D. Mich. Aug. 29, 2016)

(same); *see also* Social Security Ruling 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). As such, the ALJ was not required to give deference to their statements.

However, as noted above, the ALJ should discuss the evidence or provide reasoning showing that she considered the substantive elements of the sources' opinions. *See Southward v. Comm'r of Soc. Sec.*, 2012 WL 3887212, at *4 (E.D. Mich. Sept. 7, 2012) ("[I]n order to comply with SSR 06–3p, an ALJ 'should ... discuss[ ] the factors relating to his treatment of [a nurse-practitioner's opinion], so as to have provided some basis for why he was rejecting the opinion.'") (quoting *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007)). Here, the ALJ noted that Darling submitted evidence after the administrative hearing for her to consider and cited both Mr. Longacre's and Ms. Ryckman's statements in the record. (Tr. 18). The ALJ also stated that she "fully considered all of the evidence." (*Id.*). However, after acknowledging the evidence, the ALJ did not again cite to or discuss this evidence in the decision. In the absence of a specific articulation standard for the discussion of non-acceptable medical sources, the undersigned is guided by the principle that the ALJ is not required to expressly discuss all the evidence in the record. *Kornecky v. Comm'r of Soc. Sec*., 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

14

It appears that the ALJ considered the substantive elements of the opinions because she adopted portions of the opinions in the RFC determination. Regarding Ms. Ryckman's opinion, the ALJ essentially adopted her suggested limitations. Ms. Ryckman opined as to Darling's eligibility for vocational rehabilitation services. She noted Mr. Longacre's diagnosis of mild cognitive impairment and listed Darling's functional limitations as falling into the areas of communication, interpersonal skills, self-care, self-direction, work skills, and work tolerance. (Tr. 999). Ms. Ryckman noted several "impediment[s] to employment." These include an impaired ability to use written materials, an inability to readily understand others or to be understood by others, frequent conflict with co-workers, difficulty sustaining attention, high distractibility, and severe difficulty concentrating on work. (Tr. 999-1000). Ms. Ryckman also stated that Darling can only learn routine and repetitive tasks and would have difficulty recalling instructions or appropriate task sequence, impaired performance speed, and impaired ability to follow complex instructions. The ALJ accounted for these "impediment[s] to employment" in the RFC by restricting Darling to no more than occasional interaction with supervisors, co-workers, and the public; understanding, remembering and carrying out only simple instructions; tolerating occasional work place changes and/or reading requirements; needing reminders to perform tasks more complicated than 1- to 2-step tasks; and not performing at a production rate

pace.  (Tr. 24).  Having accounted for limitations noted in portions of Ms.

Ryckman's opinion, the ALJ necessarily would have at least considered the

substantive elements of the opinion.  Further, if Ms. Ryckman were a treating

physician—whose opinions are accorded deference under the well-known treating

physician rule—and her opinion a medical opinion, the ALJ's failure to even

mention the opinion would nevertheless qualify as harmless because the ALJ

adopted the opinion in the RFC.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

547 (6th Cir. 2004) ("[I]f the Commissioner adopts the opinion of the treating

source or makes findings consistent with the opinion, it may be irrelevant that the

ALJ did not give weight to the treating physician's opinion, and the failure to give

reasons for not giving such weight is correspondingly irrelevant.").  By analogy,

there is no reversible error here because the ALJ essentially adopted or made

findings consistent with Ms. Ryckman's restrictions and thus considered her

opinion.

The same analysis applies to Mr. Longacre's opinion because his opinion,

likewise, was adopted in part into the RFC.[3]  Mr. Longacre did not provide an

---

[3] Mr. Longacre's opinion is not a medical opinion.  Medical opinions are "statements
from acceptable medical sources that reflect judgments about the nature and severity of your
impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite
impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1257(a)(1).
Therefore, even if Mr. Longacre were considered an acceptable medical source (see, for
example, *Molina v. Comm'r of Soc. Sec.*, 2015 WL 5097553, at *6-7 (W.D. Mich. Aug. 28,
2015) and other Western District of Michigan cases holding that a limited license psychologist is
an acceptable medical source), his opinion does not reflect judgment on the nature or severity of

opinion on Darling's ability to perform work-related tasks.  Rather, he opined that

Darling is mildly mentally impaired and should be afforded educational

accommodations in order to successfully complete GED testing.  (Tr. 940-43).  He

also opined that Darling's strength in perception and interpretation of meaningful

visual stimuli "dovetails nicely with her expressed long-term goal of securing some

cosmetologist or veterinary assistant training."  (Tr. 942).  He further stated that

Darling demonstrated weakness in verbal comprehension and relatively weak

working memory.  Mr. Longacre concluded that these limitations would mean

"extra drills, memory aids, and explanations may be needed in the classroom."

(Tr. 941).  In line with Mr. Longacre's assessment, the ALJ limited Darling to

work involving simple instructions with reminders for tasks involving more than 1

or 2 steps.  As Mr. Longacre noted deficiencies in Darling's ability to read, the

ALJ limited Darling to only occasional reading.  Mr. Longacre did not opine that

Darling could not understand, remember, or carry out simple tasks, but rather that

she should be given accommodations to complete GED testing.  Thus, this opinion

does not contradict the RFC.  Therefore, as with Ms. Ryckman's opinion, because

of the consistency and similarity between Mr. Longacre's statement and the RFC

---

Darling's mental impairment and what she can still do despite the impairment.  Accordingly, the
opinion is other evidence that is not entitled to any deference or subject to a particular
articulation standard.

limitations, it would appear that the ALJ did in fact consider the substantive

elements of the statement.

Furthermore, failure to mention an opinion, even in the more concerning

circumstance not presented here of an opinion from a treating physician, can be

harmless error if the RFC is otherwise supported by substantial evidence.

In *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001), the plaintiff

appealed the denial of benefits, arguing that the ALJ failed to state reasons for

rejecting the report of the her treating physician. *Id.* at 531. In finding that the

ALJ's decision was supported by substantial evidence in the record deriving from

other medical sources, the court held that the ALJ's failure to even mention the

treating physician's report was harmless error. *Id.* at 535–36. If the failure to

acknowledge a treating physician's opinion is harmless error, then surely the

failure to acknowledge a non-medical source's opinion, which are not entitled to

any weight, does not warrant reversal. *See*, *e.g.*, *Dykes ex rel. Brymer v. Barnhart*,

112 Fed. Appx. 463, 468 (6th Cir. 2004). In *Dykes*, the ALJ referenced a

consultative examiner's opinion (entitled to less weight than a treating physician's

opinion) but otherwise did not discuss the opinion. Yet notwithstanding the

omission, the ALJ's conclusion was supported by other medical evidence in the

record. In line with *Heston*, the court concluded that the ALJ's failure to discuss

the opinion was harmless. *Id.* Likewise, and by analogy, here, as demonstrated

more fully below, the ALJ's decision is supported by substantial evidence from medical sources.  Accordingly, the failure to discuss Mr. Longacre's and Ms. Ryckman's opinions, if error, is harmless.

      2.    RFC

Darling next argues that the mental RFC assessment—the finding that Darling could understand, remember, and carry out simple instructions, in particular—is not supported by substantial evidence, (Dkt. 16, at p. 16), while the Commissioner argues that the RFC is supported by substantial evidence. According to Darling, Mr. Longacre's findings suggest that she is not capable of understanding, remembering, and carrying out simple instructions.  Intelligence testing was consistent with mild mental impairment.  Testing revealed weakness in verbal comprehension and significant impairment in her ability to read.   Mr. Longacre also noted that Darling was likely incapable of acting on simple instructions.  (*Id.* at p. 16-17).  In particular, Mr. Longacre found that Darling's working memory was weak, calling into question her ability to remember simple instructions.  As for Ms. Ryckman, she indicated that Darling did not readily understand others and would experience difficulty recalling instructions or appropriate task sequence.  (*Id.* at p. 17).  Darling faults the ALJ for not explaining how she considered these opinions and how they impact the RFC assessment.

20 C.F.R. § 404.1545 (2012) provides that the Residual Functional Capacity

is "the most you can still do despite your limitations."  The ALJ in this case

assessed an RFC accounting for Darling's mental impairments: as stated above,

Darling was limited to no more than occasional interaction with supervisors, co-

workers, and the public; understanding, remembering and carrying out only simple

instructions; tolerating occasional work place changes and/or reading

requirements; needing reminders to perform tasks more complicated than 1- to 2-

step tasks; and the inability to perform at a production rate pace.  (Tr. 24).  The

undersigned concludes that the ALJ did not err in fashioning the RFC and that

substantial evidence supports the RFC.

       In devising the RFC, the ALJ relied on the opinions of consultative examiner

Dr. Pestrue and State agency psychological consultant Dr. Marshall, as well as

other medical evidence in the record.  In May 2012, Darling underwent a

consultative examination with Dr. Pestrue.  The ALJ concluded that the results of

the examination do not support a finding of disability and gave the opinion great

weight.  (Tr. 27, 29).  After mental status examination, Dr. Pestrue opined that

Darling's social anxieties will make it difficult for her to work in social situations,

that Darling "claimed to have cognitive deficits and this will make it difficult for

her to work in any job requiring normal cognitive skills."  (Tr. 364).  On

September 10, 2014, Dr. Marshall rendered his disability opinion.  The ALJ gave

only some weight to the opinion because subsequent evidence warranted additional

limitations. (Tr. 30). Dr. Marshall reviewed the evidence of record, including Dr. Pestrue's opinion, which Dr. Marshall noted was the only medical source statement on file. He also noted that Dr. Pestrue's opinion is consistent with the evidence. (Tr. 140). Regarding her mental RFC, Dr. Marshall opined that Darling did not have limitations in understanding, memory, or sustained concentration and persistence, but that she had limitations in social interaction. (Tr. 147).

Darling also treated with AuSable Valley CMH Services. The ALJ discussed this evidence. The treatment notes from these visits do not suggest that Darling is more limited than stated in the RFC. Where these records included a statement on Darling's mental status, her mental status examinations were largely normal with only one treatment record noting a memory impairment. In May 2013, Darling's judgment and insight were normal, her mood and affect were appropriate, she had normal attention span and concentration, and her recent and remote memory were intact. (Tr. 778). In a June 2014 follow-up, Darling's mental status examination was normal. Relevant to the pertinent RFC finding here, Darling's thought content revealed no formal thought disorder, she was fully oriented, her intellectual functioning was noted as average, she had no memory impairment, and her concentration was adequate. (Tr. 665). In December 2014, an AuSable Valley CMH clinician noted that Darling was fully oriented, her intellectual functioning was average, her immediate and short-term memory were

impaired, and her concentration was mildly impaired. (Tr. 962). In an assessment with AuSable Valley in June 2016, she was again fully oriented, but her intellectual functioning was noted as "below average." Further, she had no memory impairment and her concentration was mildly impaired. (Tr. 969). These treatment notes suggest that Darling is limited in concentration and memory. The ALJ accounted for these limitations by limiting her to work with simple instructions with reminders for tasks involving more than 2 steps and no production rate requirements. In addition, while the ALJ did not engage in discussion of Mr. Longacre's and Ms. Ryckman's opinion, as discussed above their opinions are consistent with the RFC, or at least do not suggest that Darling is more limited than the ALJ's RFC assessment. There is no medical opinion in the record suggesting that Darling is more limited.

The evidence discussed above provides substantial evidence in support the ALJ's RFC determination. *See Rogers*, 486 F.3d at 241 (Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Accordingly, the undersigned finds no error in the RFC determination.

Darling also contends that the limitation to occasional reading "makes absolutely no sense." (Dkt. 16, at p. 17). She states that either she could meet a job's reading requirements, or she could not and that if she could not tolerate

reading requirements, "this cuts off one means for understanding and remembering simple instructions, an additional error in the ALJ's analysis." Darling's argument here is not entirely clear. "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). To the extent she is arguing that the reading limitation precludes full-time work or reduces the number of available jobs, the argument is not well-taken. The vocational expert in this case found a significant number of available jobs Darling could perform with the stated reading limitation. It is the Commissioner's burden at Step Five to show that the plaintiff possesses the capacity to perform other substantial gainful activity which exists in the national economy. *Foster*, 279 F.3d at 354. This burden is met when there is "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Edu. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental

impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001 (citing *id*.); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513, 516 (6th Cir. 2010); *Webb v. Comm'r of Soc. Sec.* 368 F.3d 629, 632 (6th Cir. 2004) ("the hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments.") (internal citations omitted) (citing *Varley*, 820 F.2d at 779).

As discussed above, the RFC is supported by substantial evidence, and thus accurately portrays Darling's limitations.  In interrogatories to the vocational expert, the ALJ provided a hypothetical question that mirrors the RFC, including the reading limitation.  (Tr. 326).  Hence, the hypothetical question accurately portrays Darling's limitations.  In response, the vocational expert identified three jobs that Darling could perform—document preparer, final assembler, and table worker.  (Tr. 327).  The expert explained that the occasional reading limitation is not listed in the Dictionary of Occupational Titles but is based on her knowledge of the identified jobs.  (Tr. 328).  The vocational expert's response to the hypothetical thus provides substantial evidence for the ALJ's step five finding that there are jobs Darling could perform with her RFC.  Therefore, the undersigned finds no error with regard to the occasional reading limitation.

Lastly, Darling raises another argument that is not fleshed out.  She states, in full,

> In that regard, the ALJ purported to give great weight to
> the opinion of Dr. Pestrue, the consultative examiner,

> even while acknowledging that the doctor said that
> plaintiff's cognitive deficits "will make it difficult for her
> to work in any job requiring normal cognitive skills" (Tr.
> 29). This statement implies that jobs requiring simple
> instructions do not require "normal cognitive skills."
> However, plaintiff submits that this is not the case or, at
> the least, the ALJ did not explain why it was.

(Dkt. 16, at p. 16). It is difficult to discern what Darling is challenging. She is not

challenging the ALJ's weight determination on Dr. Pestrue's opinion. If she is, the

argument is underdeveloped and therefore waived. *See McPherson*, *supra*. To the

extent she is claiming that the RFC determination is in error she is incorrect, as

demonstrated in the discussion above of substantial evidence supporting the RFC.

Finally, to the extent she claims that the ALJ should have discussed this statement

more fully, the argument is unavailing (and also adverted to in a perfunctory

manner). The ALJ was under no obligation to discuss every piece of Dr. Pestrue's

opinion, *see Dykes*, 112 Fed. Appx. at 468, nor was she under an obligation to

adopt all of Dr. Pestrue's opinion despite giving it great weight. *Price v. Comm'r*

*of Soc. Sec.*, 2016 WL 3193025, at *2 (E.D. Mich. June 9, 2016) ("[A]n ALJ is not

required to adopt all of an examining source's findings, even if the ALJ gives the

opinion great weight.") (citing *Smith v. Comm'r of Soc. Sec.*, 2013 WL 1150133, at

*11 (N.D. Ohio Mar. 19, 2013)). Therefore, the fact that Dr. Pestrue included this

statement in the opinion is of no moment: the ALJ did not adopt (and was not

required to adopt) the statement into the RFC assessment. And, if this statement is

inconsistent with the RFC, the statement does not alter the substantiality of the evidence supporting the RFC.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 31, 2019                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 31, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7850
                                          tammy_hallwood@mied.uscourts.gov